# Fidelity Trust Company *v.* Lehigh Valley Railroad Company, Appellant.

*Corporations—Stock—Preferred and common stock—Dividends—Cumulation.*

Where the holders of preferred stock of a corporation are declared by the charter of the company to be entitled to a fixed sum per annum, without limiting the sum to be paid as dividends to profits earned when made within a designated period, the holders of the preferred stock have a prior claim over the common stockholders on subsequent dividends to make up the deficiency.

The Act of March 4, 1850, P. L. 129, incorporating the Beaver Meadow Railroad and Coal Company, authorized the issue of preferred stock, and provided as follows: "And the said additional stock so issued shall be entitled to a preference over all the other stock of the said company, in every future dividend of profits which may be declared by the said company, until the holders of such additional stock shall have been paid from the funds applicable to the payment of such dividend, ten per cent per annum on the amount of the capital stock of the company represented by said shares of additional stock so held by them respectively; and the holders of the other stock of the company shall not be entitled to participate in any future dividend of the profits of the company until the holders of said additional stock shall have been paid from the funds applicable to such dividend, ten per cent per annum on the amount of the capital stock of the company represented by said additional shares so held by them respectively." *Held,* that the dividends on the preferred stock were cumulative.

Where in three particular years the preference stock was paid a ten per cent dividend, and a like dividend was paid on the common stock, and an extra dividend was also divided equally between the preferred and common stock, and there followed a series of years in which no dividends were paid, the preference shareholders, on the resumption of dividends, are entitled to arrearages without any deduction for the share of the extra dividend which they received.

Argued March 27, 1906. Appeal, No. 54, Jan. T., 1906, by defendant, from decree of C. P. No. 5, Philadelphia Co., June Term, 1905, No. 3,344, on bill in equity in case of Fidelity Trust Company, Trustee, et al., v. Lehigh Valley Railroad Company. Before MITCHELL, C. J., FELL, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before Ralston, J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*John G. Johnson,* for appellant.—The preferred stock is not cumulative : Elkins v. Camden & Atlantic R. R. Co., 36 N. J. Eq. 233.

If it be cumulative, there is no right on the part of the holders of the preferred shares to deny payment of dividends on common shares, excepting to such extent as said holders prior to June, 1904, had not received dividends at the rate of ten per centum per annum from the time of original issuance thereof : Wright v. Hanna, 210 Pa. 349.

*H. Gordon McCouch* and *Samuel Dickson,* with them *Henry S. Drinker, Jr., Stacy B. Lloyd, G. Heide Norris* and *Crawford & Loughlin,* for appellees.—The terms of the contract contained in the Act of March 4, 1850, P. L. 129, make the dividends on the preferred stock cumulative: Henry v. Ry. Co., 1 DeG. & J. 606; Webb v. Earle, L. R. 20 Eq. 556; Crawford v. Ry. Co., 3 Jur. N. S. 1093; Corry v. Ry. Co., 29 Beav. 263; Allen v. Ry. Co., 25 W. R. 524; Matthews v. Ry. Co., 5 Jur. N. S. 284; Prouty v. R. R. Co., 1 Hun, 655; Boardman v. Lake Shore, etc., Ry. Co., 84 N. Y. 157; Elkins v. Camden, etc., R. R. Co., 36 N. J. Eq. 233; West Chester, etc., R. R. Co. v. Jackson, 77 Pa. 321.

The appellees are entitled to their arrears without any de-. duction for past overpayments: Chicago, etc., Ry. Co. v. Ry. Co., 101 Fed. Repr. 792.

OPINION BY MR. JUSTICE POTTER, June 27, 1906 :

The facts of this case were not in dispute, and are clearly and accurately stated by the learned trial judge, as follows : " The original complainants in this case, and others who have intervened, are owners of shares of preferred stock of the Lehigh Valley Railroad Company, respondent.

" Under the terms of an act passed by the legislature of Pennsylvania, approved March 4, 1850, P. L. 129, the Beaver Meadow Railroad & Coal Company was authorized to issue preferred stock which was entitled to a preference over all other stock of said company in every future dividend of profits declared, until the holders were paid from the funds applicable to the payment of such dividend, ten per cent. per annum. It was further enacted that the holders of all the other stock of

the company should not be entitled to participate in any future dividend of the profits of the company until the holders of preferred stock had been first paid from the funds applicable to such dividend ten per cent. per annum.

" On June 18, 1864, an agreement was entered into between the Beaver Meadow Railroad & Coal Company and the Lehigh Valley Railroad Company, under the provisions of the Act of May 16, 1861, P. L. 702, relating to the merger of railroad corporations, by which a merger of the two corporations was effected.

" By this agreement the property of the Beaver Meadow Railroad & Coal Company was transferred to and vested in the Lehigh Valley Railroad Company. It was agreed that the holders of preferred stock of the Beaver Meadow Railroad & Coal Company should be entitled to preferred stock to be issued by the Lehigh Valley Railroad Company, securing the same rights and privileges with respect thereto as were held and enjoyed by them in the Beaver Meadow Railroad & Coal Company.

" Dividends upon the preferred stock were paid at the rate of ten per cent. until October 17, 1893. In addition thereto, on January 2, 1860, an extra dividend of ten per cent. on the preferred stock, as well as upon the common, of the Beaver Meadow Railroad & Coal Company was paid in shares of common stock, except where such dividends amounted to a fractional part of a share, when the payment was made in cash at the rate of $50.00 per share.

" In 1861 a regular dividend of ten per cent. was paid on both common and preferred stock. In 1862 ten per cent. was paid on preferred stock, but only eight per cent. was paid on common stock.

" On January 2, 1863, an extra dividend of ten per cent. was declared and paid in stock, and on January 2, 1866, a dividend of ten per cent. of the same character was paid by the Lehigh Valley Railroad Company. The regular dividend of ten per cent. was paid each year upon the preferred stock until 1893. In 1876 nine per cent. only was paid to the common stockholders, and during the years from 1877 to 1893 the annual dividend upon the common stock was from six to eight per cent. No dividends were declared on either the preferred

or common stock from October 17, 1893, until June 20, 1904, when a dividend of ten per cent. was declared on the preferred stock, payable August 1, 1904, and a dividend of one per cent. on the common stock.

" A bill in equity was filed by the holders of the preferred stock, praying for a decree declaring them entitled to cumulative dividends at the rate of ten per cent. per annum before the payment of any dividends to the holders of common stock; for an order directing the specific performance of the agreement of merger between the corporations, and for an injunction enjoining the payment of dividends to holders of common stock until the preferred stockholders had been paid at the rate of ten per cent. per annum from October, 1893.

"An answer and replication were filed and testimony taken in support of the allegations contained in the bill and in the answer which was amended at the hearing."

Under these facts two questions arose which are thus stated by appellant:

" Whether the holders of preferred shares were entitled cumulatively, to dividends at the rate of ten per centum per annum from the time of issuance thereof, before the holders of common shares were entitled to any dividends.

" Whether, if thus entitled, their right was to an amount in excess of ten per centum per annum from the date of original issuance of shares, there having been paid to them, in some years, dividends in excess of ten per centum per annum."

The court below decided both these questions adversely to the defendant company, and finally decreed " That by virtue of the provisions of the Act of Assembly of Commonwealth of Pennsylvania, March 4, 1850, P. L. 129, and the execution of the articles of merger between the Beaver Meadow Railroad and Coal Company dated June 18, 1864, and the issue of the Lehigh Valley Railroad Company of its preferred stock thereunder, the Lehigh Valley Railroad Company specifically contracted that the holders thereof should be entitled to cumulative dividends thereon at the rate of ten per cent. per annum before the payment of any dividend to the holders of its common stock.

" The Lehigh Valley Railroad Company is hereby perpetually enjoined from making any payments of dividends to the

holders of its common stock until it shall have paid the holders of its preferred stock, dividends at the rate of ten per cent. per annum from October 17, 1893.

" Judgment is hereby entered in favor of the complainants against the defendant for the sum of $91,338.85, being ten per cent. per annum from October 17, 1893, to August 1, 1903, on 1,714 shares of preferred stock of the par value of $83,892 with interest at the rate of six per cent. per annum from August 1, 1904; the various complainants being entitled to the proportion of said sum which the number of shares held by him, her or it bears to the whole 1,714 shares held by them in the aggregate."

From this decree defendant has appealed.

As to the first question, whether or not the dividends upon the preferred stock are under the contract cumulative, we feel that sound reason, and the weight of authority, both English and American, are in accordance with the conclusion reached by the court below.

The act of March 4, 1850, under which the preferred stock was issued, provides as follows : " And the said additional stock so issued shall be entitled to a preference over all the other stock of the said company, in every future dividend of profits which may be declared by the said company, until the holders of such additional stock shall have been paid from the funds applicable to the payment of such dividend, ten per cent per annum on the amount of the capital stock of the company represented by said shares of additional stock so held by them respectively; and the holders of the other stock of the company shall not be entitled to participate in any future dividend of the profits of the company until the holders of said additional stock shall have been paid from the funds applicable to such dividend, ten per cent per annum on the amount of the capital stock of the company represented by said additional shares so held by them respectively."

There is no provision in the statute bearing directly upon the question of cumulation, and in the absence of any specification to the contrary the general rule would seem to be, that the preferred stock is entitled to arrears. While the act specifies that the preferred stockholders are to be paid from the profits, ten per cent per annum, before the holders of other stock are

entitled to participate at all, we can see in the language no
limitation that the rights of the preferred stockholders are con-
ditional upon the earning of sufficient profits each year to dis-
charge their claim.   No matter in what form the guarantee of
dividends may be made, they can be paid only out of the net
profits.   An agreement to pay even though there be no profits,
would be void as against public policy.   Since their payment
then depends upon profits, it would be postponed during years
of business depression which showed no net profits.   In the
present case there is no guarantee of profits, or of payment of
dividends every year, but there is an agreement that whenever
there are profits to divide the holders of preferred stock shall
receive of them at the rate of ten per cent per annum on the
amount of his holding.

In 9 Am. & Eng. Ency. of Law (2d ed.), 699, the prevailing
principle applicable to such a situation is thus summed up:
" The general rule is that where the holder of such preferred
stock is declared to be entitled to a fixed sum per annum,
without limiting the sum to be paid as dividends to profits
earned when made within a designated period, the holder of
the preferred stock has a prior claim over the common stock-
holders on subsequent dividends to make up the deficiency."

In 1 Morawetz on Priv. Corp. (2 ed. 1886) sec. 458, it is
said that " If a corporation has agreed or guaranteed that the
holders of preferred shares shall be paid dividends at a certain
rate per annum, and the profits at any time are insufficient to
enable the company to perform its agreements, the arrears
must be made up out of profits subsequently earned; and no
dividends can be paid to the holders of the common shares un-
til the preferred shareholders have been fully paid."   And in
2 Clark & Marshall on Priv. Corp. (190) sec. 529 d, the rule
is thus stated: " If the contract with the preferred stock-
holders guaranteed or entitled them in general terms to a cer-
tain annual dividend, not making the dividend payable in each
year dependent upon the profits of that year, the dividends are
cumulative ; and if the profits in any year are not sufficient to
pay the dividend, it must be paid, in addition to subsequent
dividends, out of the profits of subsequent years, before any
dividends can be paid to the holders of common stock."

And again in 1 Cook on Stockholders, section 273, we find

the decisions summarized, and the further suggestion that the rule as stated is in accord with the usages of the business community. The author says, " If preferred stock is issued, with out any mention of whether or not the dividends are cumulative, then the law makes it cumulative. As soon as there are net profits available for dividends, the corporation must pay the preferred dividends and all arrears thereon before a dividend is declared on the common stock. This is a well-settled rule at common law in this country and in England, and is not only equitable, but is in accord with the understanding of the business community. The right of the preferred stockholders to arrears of dividend is not deemed waived by delay, nor in any way, except upon clear proof of intent to waive."

We regard the decision of this court in West Chester, etc., R. R. Co. v. Jackson, 77 Pa. 321, as covering substantially the same question as that now before us ; and under the ruling in that case, the defendant company here is liable for the arrears in the payments of dividends at the rate of ten per cent per annum. It seems to us that a reasonable construction of the contract requires us to hold that it means simply that whenever there are profits to divide the company is to see to it that the holder of preferred stock has received the stipulated amount of ten per cent per annum before making any award to the other stockholders. The case of Henry v. Great Northern Ry. Co., 1 DeG. & J. 606 (638), is recognized as the leading authority on the subject under consideration, and Lord Cranworth there makes a suggestion which has much force, as a reason for the view he adopts. He says, " If the directors are, as probably they will be, ordinary shareholders, they will have an interest so from time to time to set aside portions of their funds for the benefit of the company in the next half year as to prevent the preference shareholders from receiving a dividend in full, and they will thus create a larger fund for the division on the next occasion, the entire benefit of which, on the argument of the defendant, will accrue to the benefit of the ordinary shareholders. . . . When I see that on one construction of those acts the legislature will have given to the directors an interest in opposition to their duty, and that on the other construction they will not have done so, I am led strongly to believe that the latter is the sounder interpretation."

In the present case, it is manifest that a great advantage to the other stockholders would accrue, if the preferred stock be considered as noncumulative.   No such object was of course before the directors in refraining from the payment of annual dividends, but the possible result shows how such a power might be exercised to deprive the preferred stockholders of their contract rights, and a construction that would permit of such a result is to be avoided.   We are of the opinion that the dividends upon preferred stock were properly held to be cumulative.

Turning now to the second question.   Are the preferred stockholders to be charged, as against the amount in arrears for the years from 1893 to 1904 with the amount paid in excess of ten per cent during the years 1860, 1863 and 1866 ?   The preference created by the statute gave to the holders of the preferred stock, the right to receive $5.00 per share per annum on each share of stock held by them, before the other stockholders were entitled to anything.   That was the extent of the preference.   If the funds applicable to a dividend amounted to just enough for that purpose the other stockholders took nothing.   But when each class of stock had been paid ten per cent, they were equal, and equally entitled to partake of whatever remained in the fund applicable for dividend purposes.   The preferred stockholders were not creditors, nor was the amount paid to them in excess of ten per cent in any one year to be charged to them as an advance payment upon any future dividends that might be earned or divided in coming years.   There was no preference shown in the distribution of these extra dividends.   All the shareholders fared alike in so far as they were concerned. The preference created under the act of assembly went only so far as to give to the preferred stockholders a right to claim the first proceeds out of the fund applicable to dividends, to the extent of $5.00 per share, per annum on their stock, and no farther.   After that amount was paid the common stockholders were entitled to participate, and did so participate, taking during the years when the extra dividends were paid, the same amount per share, as the preferred stockholders.   So that the extra payments during the years mentioned cannot be considered as overpayments to the holders of preferred stock. If the preferred stockholders had been limited, under the terms

of the contract, to ten per cent per annum in any one year, and all the balance of the fund had belonged exclusively to the common stockholders, then the contention that these extra dividends should be set off as against the arrears would be sound. But there is no such limitation in the act. The preferred stockholders stood upon the same plane as the others, with the additional advantage that they had the first right to partake in the distribution of profits up to the limit of $5.00 per share per annum, and if necessary, the whole amount of the profits might be taken for that purpose, even if thereby the other stockholders were excluded. We agree with the conclusion of the learned court below, that the holders of preferred stock are entitled to have the arrears paid to them by the defendant company, without any deduction on account of dividends paid at a time when there had been no deficit. In so far as the excess of such payments over the ten per cent per annum to the preferred stockholders was concerned, it was declared not as a matter of preference, but as an equal distribution to all stockholders.

The assignments of error are overruled, the appeal is dismissed, and the decree of the court below is affirmed.