## BARCLAY v. WABASH RY. CO. et al.

District Court, S. D. New York. January 12, 1928.

**1. Corporations ⬳152—Declaration of dividends is within sound discretion of directors, unless controlled by statute or contract.**

As a general rule, the declaration of dividends by directors, acting in good faith, is a matter of sound discretion, with reference both to common and preferred stock, unless their action is controlled by statute or contract.

**2. Corporations ⬳156—Discretion of directors of railroad corporation in declaring dividends held not affected by statute as to preferred stock (Burns' Ann. St. Ind. 1914, §§ 5333–5339; Laws Ind. 1893, c. 92).**

Discretion to declare dividends, of directors of railroad corporation organized under Laws Ind. 1865, c. 20 (Burns' Ann. St. Ind. 1914, §§ 5333–5339), authorizing corporation to establish preference in respect to dividends, *held* not affected by subsequent act (Laws 1893, c. 92), containing special provisions for preferred stock of corporations, since subsequent statute was by its terms inapplicable to companies authorized to issue preferred stock under existing law.

**3. Corporations ⬳156—Directors of railroad corporation had authority to divert earnings, available for payment of preferential noncumulative dividends, to improvement and equipment of corporate property in their discretion (Burns' Ann. St. Ind. 1914, §§ 5333–5339).**

Directors of railroad corporation organized under Burns' Ann. St. Ind. 1914, §§ 5333–5339, where not limited by contract, had authority to divert corporation's earnings, available for dividends on preferred stock, to improvement and equipment of corporate property, where preferential dividends were noncumulative.

**4. Corporations** ⟨⇒⟩152—**No debt to stockholders is created by ascertainment of corporation's net profits without declaration of dividends, where dividends are noncumulative.**

Valid declaration of dividends by board of directors creates a debt, but a mere ascertainment of corporation's net profits creates no obligation to stockholders for any given year in which dividends are not declared, where dividends are noncumulative.

**5. Corporations** ⟨⇒⟩156—**Holders of preferred noncumulative stock in railroad corporation held not entitled to recover amount of undeclared dividends for prior years as condition to payment of dividends to other classes of stock (Burns' Ann. St. Ind. 1914, §§ 5333–5339; Laws 1893, c. 92).**

Owners of preferred stock of railroad company organized under Burns' Ann. St. Ind. 1914, §§ 5333–5339, who received less than amount of their preferential dividends for period of about 10 years, *held* not entitled to recover balance of preferential dividends, which had never been declared or paid as condition to payment of dividends by railroad company on other classes of stock, where preferred stock was made noncumulative and corporate earnings had been used for permanent improvements; a noncumulative preferred dividend not being a fixed charge on net earnings, and Laws 1893, c. 92, being inapplicable.

In Equity. Suit by John C. Barclay against the Wabash Railway Company and others, submitted on the pleadings on motion for final decree. Decree dismissing bill on merits.

William R. Begg, of New York City (Hornblower, Miller & Garrison, of New York City, of counsel), for plaintiff.

Charles E. Hughes, Winslow S. Pierce, and F. C. Nicodemus, Jr., all of New York City, for defendant Wabash Ry. Co.

Charles E. Hughes, of New York City, for defendants Hollins, Austin, Leslie, and Krapp.

Davis, Wagner, Heater & Holton, of New York City (Arnold L. Davis, of New York City, of counsel), for defendant Dickson.

Winthrop Taylor, of New York City, for defendants Hall and Cohn.

WINSLOW, District Judge. This is a suit by John C. Barclay, as a holder of 5 per cent. profit-sharing preferred stock A of the Wabash Railway Company, suing on behalf of himself and other holders of preferred stock A to obtain a decree adjudging that "the holders of said preferred stock A of the railway company are entitled to receive preferential dividends up to the amount of 5 per cent. for each fiscal year from 1915 to 1926, inclusive, to the extent that such dividends were earned in such fiscal years, but were unpaid—but not in excess of five per cent. for any fiscal year—before any dividends be paid by the railway company upon any other class of its stock," etc.

The matter originally came on for hearing on plaintiff's motion for an interlocutory injunction restraining the railway company, etc., pending the determination of the suit, from declaring or paying any dividends upon the preferred B stock of the company, or any dividends on the common stock, unless there shall have first been paid all of the preferential dividends at the rate of 5 per cent. in each fiscal year upon its preferred stock A from the date of the organization of the railway company down to and including the fiscal year 1926, to the extent that the railway company has had net earnings available for the payment of such dividends and to the extent that such dividends remain unpaid.

On the argument for interlocutory injunction, pursuant to the suggestion and the agreement between counsel and with the court's approval, it was stipulated that the intervening defendant Dickson might serve an answer substantially the same as the answer interposed by the railway company, whereon the cause would stand submitted on the pleadings. Such answer was forthwith served, and all parties now move for final decree on the undisputed facts.

Diversity of citizenship exists between the plaintiff and defendants. The Wabash Railway Company was organized under the laws of the state of Indiana on or about October 22, 1915, pursuant to an "act of the General Assembly of the state of Indiana approved March 3, 1865" (Laws 1865, c. 20, p. 66). The railway company operates a railway system within the states of Ohio, Illinois, Indiana, Iowa, and Missouri. Under its certificate of incorporation, three classes of stock have been issued, which may be referred to as (1) 5 per cent. profit-sharing preferred stock A; (2) 5 per cent. convertible preferred stock B; and (3) common stock.

The preferred stock B is, by its terms, convertible into 5 per cent. profit-sharing preferred A (hereinafter called "preferred stock A") and common stock of the railway company, at the rate of one-half share of preferred stock A and one-half share of common stock for each share of preferred stock B.

The plaintiff is the owner and holder of 100 shares, of the par value of $100 each, of said preferred stock A. Defendants Hall, Cohn, and Cohn are the owners and holders of preferred stock B (par value $100 each).

The defendants Hollins, Austin, Leslie, and Krapp are the owners of common stock (par value $100 each). These defendants are made parties defendant, respectively, as representatives of the holders of preferred stock B and of the common stock.

The rights of the three classes of the stock of the railway company to dividends are set forth in article Fourth of the certificate of incorporation annexed to the complaint, and also in the certificates issued by the railway company for the several classes of stock, copies of which are also annexed. The certificate of incorporation provides:

"Fourth. The five per cent. profit-sharing preferred stock A shall be entitled to receive preferential dividends in each fiscal year up to the amount of five per cent. before any dividends shall be paid upon any other stock of this corporation, but such dividends on the five per cent. profit-sharing preferred stock A shall be noncumulative. After the payment or the setting apart in any one fiscal year of five per cent. dividends upon the five per cent. convertible preferred stock B and upon the common stock of this corporation, the five per cent. profit-sharing preferred stock A shall be entitled to receive additional dividends at the same rate per cent. as any further or additional dividends which may be declared in that year upon such common stock. * * * "

No dividends were declared or paid by the railway company upon its said preferred stock A during the period from 1915 until January 29, 1917, on which date the railway company declared and paid a dividend of 1 per cent. upon its said preferred stock A, and a like dividend of 1 per cent. thereon quarterly thereafter to and including April 30, 1918. From April 30, 1918, to May 25, 1925, no dividends were paid upon the preferred stock A. On May 25, 1925, the railway company paid a quarterly dividend of 1¼ per cent. upon its preferred stock A and a like dividend quarterly thereafter to date, such amount representing dividends of 5 per cent. in each fiscal year since May 25, 1925, upon said preferred stock A.

The answer admits balances of net earnings in certain nondividend periods over expenses and prior charges, but denies that such net earnings could, within the sound discretion of its directors, have been distributed to stockholders, and avers that its entire surplus earnings for all of the periods, not actually distributed to stockholders and not reserved for working capital or necessary corporate requirements, has been actually appropriated to, and is now represented by, fixed and permanent improvements, etc.

Paragraph Ninth of said complaint alleges that:

"The earnings of each fiscal year available for dividends on said preferred stock A of the railway company in each year in which the company declared no dividends or declared dividends of less than five per cent. on said preferred stock A, were retained by the railway company and carried to its surplus account and used for additional working capital and for other purposes."

It is further alleged that during the period the aggregate of preferential dividends of five per cent. in each fiscal year upon the preferred stock A to the extent that the railway company had in each fiscal year during the period net earnings available for the payment of such dividends amounted to more than $16,000,000 in excess of the dividends declared and paid by the railway company upon said preferred stock A, but that (paragraph Tenth, complaint) "all of said sum of $16,000,000 available for such dividends, but unpaid therefor, was carried to the surplus of the railway company and used for additional working capital and for other proper corporate purposes."

This is admitted by the answer, except it denies the availability of such surplus for dividends on preferred stock A.

The railway company paid no dividends upon its preferred stock B from its organization until April 1, 1927, on which date the railway company paid a dividend of 5 per cent. upon its preferred stock B; but no dividend thereon has been paid since, and no dividends have been paid on its common stock.

And it is alleged that the railway company threatens to, and will unless restrained, at once inaugurate the payment of regular dividends upon its preferred stock B and upon its common stock out of its earnings or surplus without having first made good and paid out of such surplus full preferential dividends of 5 per cent. in each fiscal year upon its preferred stock A to the extent that such preferential dividends were earned in each fiscal year, but were not paid in full, and it is alleged that such contemplated act will deprive the holders of the said preferred stock A of the dividend rights inhering in said preferred stock A and diverting from said preferred stock A net earnings available for said preferential dividends thereon which were not paid.

The answers admit all of the material allegations of the complaint, except that they

deny that the earnings of the railway company in nondividend periods, which were used for permanent improvements and additions to the railway company's property and carried into surplus, were available for dividends. The answer avers that the railway company is free, in any fiscal year in which dividends amounting to 5 per cent. have been paid upon the preferred stock A, to pay dividends on preferred stock B up to 5 per cent., and set apart or declare dividends on the common stock, and that such payments are unrelated to payment of dividends upon preferred A stock in prior years.

The plaintiff, on his part, by moving for final decree, admits many other allegations of the railway company's answer, including the allegation "that its entire surplus earnings of all periods since the incorporation of the railway company not actually distributed to stockholders and not reserved for working capital or necessary corporate requirements has been actually appropriated to and is now represented by fixed and permanent improvements and additions to the property and equipment of the railway company, to enable it adequately to discharge its public duties, to protect its property, and that no part of such alleged surplus is represented by any cash or liquid fund or by any accumulation of such assets available for dividends."

The fundamental question to be determined is whether it be true, as asserted by the plaintiff, that the holders of the noncumulative preferred stock A of the railway company are vested with an absolute right to preferential dividends up to 5 per cent. in each fiscal year to the extent that the railway company has in such year net earnings available for such dividends, and whether this right attaches to such earnings if such declared dividends are not adequate.

[1] There is no contention that the directors have not acted in good faith and with reasonable regard for the needs of the corporation. Good faith is not now in issue. The declaration of dividends is a matter of sound discretion of the directors, acting in good faith. This general rule is applicable alike to common stock as well as preferred stock, and is subject to the proviso only that no statute limits or controls their action or valid contract places an obligation upon them to do otherwise.

[2] The Legislature of Indiana (Act Feb. 28, 1893; Laws 1893, c. 92) made special provisions for preferred stock issued by industrial and other corporations. But this statute by its express terms is inapplicable to any company which by existing law is authorized to issue preferred stock. The defendant railway company was incorporated under a different statute (Act March 3, 1865; Laws 1865, p. 66), providing for the creation of railroad corporations in reorganization (Burns' Stat. 1914, §§ 5333–5339). The statute under which the railway company is incorporated authorizes the corporation to establish preference in respect to dividends in favor of different classes of stock, and to secure the same in such manner and to such extent as the corporation may deem expedient. The lawful discretion of the board of directors is unfettered by statute.

[3] The plaintiff further contends that the holder of preferred A stock is entitled to preferential dividends as a matter of right under his contract, and that the words "noncumulative" imply but one condition, namely, that the railway company shall have net earnings in any particular year available for the preferential dividends for such year. I do not understand that to be the rule here applicable. If the discretion of the directors be exercised within reason, and the profits which might otherwise be available for dividends be used to improve and equip the corporate property, that discretion, unless limited by valid contract, will not be interfered with.

[4, 5] Paragraph Fourth of the certificate of incorporation provides for a noncumulative "*dividend.*" If a *dividend* is not declared in any given year, or if less than 5 per cent. is so declared, a *debt* for the undeclared dividend is not thereby created. The valid declaration of a dividend by the board of directors creates a debt, but the mere ascertainment of net profits does not create such an obligation. The dividend preference not being cumulative, but only preferential "in each fiscal year up to the amount of 5 per cent. before any dividend shall be paid upon any other stock of this corporation," etc., an undeclared dividend is not to be piled up or accumulated, so that payment of the accumulation is a condition precedent to the declaration of dividends on subordinate issues. If there were doubt in my mind as to the status of this preferred A stock, the case of N. Y. L. E. & W. R. Co. v. Nickals, 119 U. S. 296, 7 S. Ct. 209, 30 L. Ed. 363, would resolve that doubt and be decisive. See, also, Continental Ins. Co. v. U. S., 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871. I agree with counsel that the latter case is authority for the proposition that there is no right to dividends which are dependent upon a declaration and payable out of the profits of a par-

ticular year, unless they are declared by the directors in the proper exercise of their discretion.

Counsel for defendants have pertinently cited the decision of Judge Crump in Norwich Water Power Co. v. Southern Ry. Co., 11 Virginia Law Register (N. S.) 203 (Law and Equity court of city of Richmond), where the precise questions here at issue are exhaustively discussed. The learned judge in substance holds that, as a general proposition, "where the dividends are made noncumulative, the presumed intention is that the unpaid dividends in any one or more years were not to accumulate, but, if they were not declared and paid as dividends in any one year, they were lost to the stockholders. * * * Where the dividends are declared to be noncumulative, the phrase carries with it the general idea that the dividend, if not declared and paid within any one year, although earnings exist for that year, is lost to the preferred stockholders; that is, that noncumulative means that the right to the dividend is measured by the action of the board of directors in any one year, and the failure to declare the dividend in any one year prevents it from accumulating as a further charge upon the earnings of the company then existing or which may be subsequently acquired."

The learned judge adds (and I think it may not be questioned) that this general rule may be modified by the charter. Nor will it be questioned that the rule might be controlled by statute.

The contract in the instant case does not, to my mind, fetter the sound discretion of the directors nor give the preferred stockholders a continuing, accumulating obligation or liability, which must ultimately, at all events, be discharged. No absolute right exists to resort to earnings of prior years for undeclared dividends. Any other view in the case would necessitate utter disregard of the reasonable intent and meaning of the language of the noncumulative provision.

I think the citations of authorities that at first blush seem to run counter to the expressed view tend rather to support my conclusion, or are distinguishable from the case at bar. In Collins v. Portland Electric Power Co., 12 F.(2d) 671, at page 675, 48 A. L. R. 73, the court held (citing 14 C. J. 431),

that "where the dividends are noncumulative and no profits are made in a particular year, 'the preferred stockholders are not entitled to have the dividends for that year made up out of the profits made in subsequent years.' Conversely it follows that, where profits are made in a particular year, and they are not devoted to some corporate purpose, there is no reason why directors may not in a subsequent year declare dividends and pay them."

In that case, the directors did declare a dividend for an antecedent year from available surplus profits which had not been used for corporate purposes. In the case at bar, the directors have not declared the sought for dividend, and the sum alleged to have been available for such dividend has been "used for additional working capital and for other proper corporate purposes." Bill of complaint, par. Tenth. As to whether the directors of the defendant railway company may have had the power to declare a dividend out of earnings of a prior year, instead of using the funds for other corporate purposes, it is not now necessary to determine. They did not do so.

Wood v. Lary, 47 Hun, 530, cited by plaintiff, rests upon the certificate, which the court held "places the question of these [stockholders'] rights beyond the discretion of the directors," and thus it is not governed by the rule in New York, etc., R. Co. v. Nickals, supra. Burk v. Gas, etc., Co., 87 Kan. 6, 123 P. 857, Ann. Cas. 1913D, 772, dealt with what was really a guaranteed dividend. The various citations by plaintiff of cases arising in New Jersey bear upon statutes of that state controlling the action of directors.

The plaintiff erroneously assumes that the Indiana statute, enacted in 1893, and similar to that of New Jersey, is applicable. As already stated by its very terms, the Indiana statute of 1893 is not applicable to this railroad corporation organized under a prior statute. I am of the opinion that, in the instant case, the noncumulative preferred dividend is not a fixed charge upon net earnings.

The case having been submitted on the pleadings on motion for final decree, it is adjudged, in accordance with this opinion, that a final decree issue in favor of the defendants, dismissing the bill on the merits.